By the Court.
 

 It is insisted that the trial court committed numerous errors requiring the Court of Appeals to reverse the judgment.
 

 Several of these alleged errors discussed by the Court'of Appeals are based upon a bill of particulars furnished by the prosecuting attorney after a request had been made by the defendants. The bill reads as follows:
 

 “The state of Ohio will prove on the trial of the above stated case, the following matters:
 

 “The defendants John T. DeRighter and Susan DeRighter, and Irene Kelley and Laundon T. McGrain conspired with one another and did plan, scheme and arrange for the said Laundon T. McGrain to register
 
 *554
 
 fraudulently and unlawfully and to vote fraudulently and unlawfully for and in the primary election in the city of Cleveland on September 28, 1943 in Precinct F of ward 22 and precinct U of ward 22, respectively.
 

 “The said Laundon T. McGrain assisted and helped by the said defendants John T. DeRighter and Susan DeRighter and Irene Kelley fraudulently and unlawfully registered and voted in the said precincts F and U of ward 22 for and in the city primary election in the city of Cleveland on September 28,1943, under the fictitious names of Henry A. Gaskey in said precinct F and Thomas J. Malloy in said precinct U, the said Laundon T. McGrain, also known as Henry A. Gaskey and Thomas J. Malloy, being not a legally qualified voter in said Precincts F and U in said ward 22 in said city of Cleveland; and the said defendants John T. DeRighter and ,Susan DeRighter and Irene Kelley assisted and helped to put into effect the said fraudulent and unlawful registration and voting, and procured the said Laundon T.' McGrain to so fraudulently and unlawfully register and vote in the places and at the times aforesaid.
 

 “The offenses set forth in the indictments are as follows:
 

 “False registration — Section 4785-201, General Code,
 

 “Illegal voting — Section 4785-202, General Code.
 

 “Section 12380, General Code, entitled ‘Aiders and Abettors’ provides that whoever aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender.”
 

 In the opinion of the Court of Appeals it is stated that the bill of particulars improperly “attempts to enlarge the criminal charge” but “narrowed the issues.” However, a careful study of the record discloses no basis for either of these conclusions. It is stated that in the two counts of the indictment McGrain was
 
 *555
 
 charged with
 
 registering
 
 unlawfully in precinct
 
 F
 
 and
 
 voting
 
 unlawfully in precinct
 
 U
 
 but that in the bill of particulars he was charged with both registering and
 
 voting
 
 in precinct
 
 F.
 
 Clearly the first half of this statement is correct but the second is. not. The exact language used in the bill of particulars is that the registering and the voting occurred
 
 “respectively”
 
 in precincts F and U. It was charged simply that McCtrain unlawfully had respectively registered in the one precinct , and voted in the other. At no time during the trial did the prosecuting attorney contend that either the indictment or the bill of particulars included a charge of
 
 voting
 
 in precinct F, and the record discloses nothing to indicate a misunderstanding on the part of the defendants, the court or the jury. The word “re^ spectively” is not quoted nor is reference made to it in the opinion of the Court of Appeals. But even if the defendants had considered the bill of particulars ambiguous or inconsistent with the indictment, under the provisions of Sections 13437-6 and 13437-29, General Code, they could have asked to have the bill amended. After failing to avail themselves of the remedy the law provides, the defendants cannot be heard to complain.
 

 Another error is predicated upon the fact that the prosecuting attorney read the bill of particulars in his opening statement to the jury. Just how this could have been prejudicial or even improper is not apparent, inasmuch as the statutory function of a bill of particulars is to set “up specifically the nature of the offense charged” — the very thing a jury is required to know in order to render an intelligent verdict. Furthermore, the bill of particulars was furnished upon the request of the defendants themselves, and they evidently saw no impropriety in the reading of it to the jury, because they not only made no objection thereto but
 
 complained
 
 when the court did
 
 not
 
 
 *556
 
 read it during Ms charge. Then, too, under the mandatory provisions of Section 13442-8, General Code, relating to trial procedure in criminal cases, “counsel for the state must first state the case for the prosecution, and may briefly state the evidence by which he expects to sustain it.” This is exactly the thing the prosecuting attorney did; and the fact that part of his statement was read is of no importance.
 

 A further claim of error is based upon the fact that the bill of particulars contains no allegation as to like acts or similar offenses. It is contended that this so “narrowed the issues” as to render evidence with reference thereto inadmissible. This view misconceives the purpose of a bill of particulars under the law of this state as set forth in Sections 13437-6 and 13437-29, General Code, already mentioned. The first of these reads in part as follows:
 

 “Provided, that the prosecuting attorney, if seasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the
 
 nature of the offense
 
 charged.” (Italics supplied.)
 

 Hence, it is clear that the purpose of a bill of particulars is not to disclose the state’s evidence but simply to state specifically the nature of the offense charged. When this is stated in the indictment the accused is entitled to no bill of particulars, and there is nothing in the statutes requiring that an indictment must contain an allegation as to any like act or similar offense the prosecuting attorney expects to prove. Section 13444-19, General Code, reads as follows:
 

 “In any criminal case where the defendant’s motive, intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive,,intent, the absence of mistake or accident on his part, or the
 
 *557
 
 defendant’s scheme, plan or system in doing the act in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to. show the commission of another or subsequent crime by the defendant.”
 

 The fact that the bill of particulars contains no allegation as to like acts or similar offenses did not render evidence with reference thereto inadmissible.
 

 Another error found by the Court of Appeals was the fact that evidence of the acts and declarations of aiders and abettors or coconspirators was admitted as soon as a conspiracy had been established
 
 prima facie
 
 and before it finally had been proved beyond a reasonable doubt. The action of the trial court in admitting this evidence was in accord with the general rule. In fact in some jurisdictions it is not required that even
 
 prima facie
 
 evidence of the conspiracy be received
 
 before
 
 the evidence of acts and declarations of' coconspirators is admitted. But Ohio follows the general rule, as clearly stated in the syllabi in the cases of
 
 State
 
 v.
 
 Doty,
 
 94 Ohio St., 258, 113 N. E., 811, and
 
 Curtis
 
 v. State, 113 Ohio St., 187, 148 N. E., 834, mentioned in the opinion of the Court of Appeals. However, in its comment that court expresses the view that at first blush these cases appear to have enlarged' the Ohio rule but that “a reading of these two opinions discloses that the state in each instance had first established beyond a reasonable doubt that a conspiracy existed. ’ ’ Evidently the court overlooked the much earlier cases of
 
 Fouts
 
 v.
 
 State,
 
 7 Ohio St., 471,
 
 Clawson
 
 v.
 
 State,
 
 14 Ohio St., 234, and
 
 Goins
 
 v.
 
 State,
 
 46 Ohio St., 457, 21 N. E., 476. In their opinions in the first two cases, respectively, Judge Bowen and Judge Brinkerhoff stated the rule, and in the fourth paragraph of the syllabus in the third case appears the following unmistakable language:
 

 
 *558
 
 “On the trial of one of several defendants jointly indicted for an offense, the declarations of a codefendant, made in the absence of the defendant on trial, in furtherance of the common purpose, are admissible when a
 
 prima facie
 
 case of conspiracy has been made.”
 

 Hence, in the instant case the trial court properly admitted this' evidence as soon as a conspiracy had been established
 
 prima facie.
 

 Another matter that the Court of Appeals seems to have held erroneous was the admission of evidence of the acts and declarations of the defendants subsequent ( to- McGfrain’s commission of the crimes of illegal registration and voting. The single fact that these acts and declarations were subsequent does not render such evidence inadmissible. It is an elementary rule of law that any admission by an accused as to his connection with the criminal act charged is presumed to have been voluntarily made and will be admitted in evidence against him unless it is shown on his part to have been involuntary. The record discloses nothing to indicate that this evidence was not admissible.
 

 Another alleged error was the admission of evidence of the acts and declarations of coconspirators subsequent to the commission of the crimes charged. Again, the single fact that the crimes already had been committed does not render this evidence inadmissible if the acts and declarations occurred during the pendency of the unlawful enterprise and in furtherance of the common object. The rule is well summarized in 2 Wharton on Criminal Evidence (11 Ed.), 1205, Section 715, as follows:
 

 ' ‘ ‘ The acts and declarations of a conspirator are admissible against a coconspirator when they are made during the pendency of the wrongful act, and this includes not only the perpetration of the offense, but also its subsequent concealment. The theory for the admission of such evidence is that persons who conspire
 
 *559
 
 to commit a crime, and who do commit a crime, are as much concerned, after the crime, with their freedom from apprehension, as they were concerned, before the crime, with its commission; the conspiracy to commit the crime devolves after the commission thereof into a conspiracy to avoid arrest and implication. ’ ’ •
 

 Under the circumstances of the instant case this evidence was properly admitted.
 

 A further complaint of error is predicated upon the admission of evidence of unlawful registration and voting by McGrain in precincts other than the two specified in the indictment and the bill of particulars. The rule is stated as follows in 12 Ohio Jurisprudence, 349, Section 329:
 

 “It is well settled that evidence of a general scheme of conspiracy and confederation to commit crime is admissible on the part of the state, for the purpose of proving
 
 scienter,
 
 motive, intent, and the like, where a single offense only is charged in the indictment. And if it is competent to prove a conspiracy, it follows that any evidence tending to establish the conspiracy is also competent. Where the state is relying upon testimony to the effect that the accused and several others were in a general conspiracy to commit the crime charged, it has a right to show everything that was done pursuant to such conspiracy, and if, incidentally, another and distinct crime is thereby developed, this fact does not deprive the state of its right to bring out the facts.”
 

 This record discloses evidence which, if believed, shows a conspiracy to elect a particular candidate to the office of city councilman, and it is contended by the state that the registration and voting in other precincts constituted an important part of the unlawful enterprise. This evidence was properly admitted.
 

 Numerous other complaints are alleged, but a study of the record of more than 1,600 pages fails to reveal
 
 *560
 
 error prejudicial to either defendant in the trial of the case. Hence, the Court of Appeals was in error in reversing the judgment of the Court of Common Pleas.
 

 Inasmuch as the Court of Appeals erroneously held that much of the evidence was inadmissible and therefore not entitled to consideration, the case is remanded to that court for the single purpose of determining whether the verdict and judgment of the Court of Common Pleas are manifestly, against the weight of all the evidence.
 

 Judgment reversed and case remanded.
 

 Weygandt,' C. J., Zimmerman, Bell, Williams, Turner, Matthias and Hart, JJ., concur.